Next case, United States v. Karagianis. Mr. Luthen, whenever you are ready. Welcome back, Mr. Luthen. It's good to see you. Good morning, Judge Lee. Good morning. May it please the Court, Elliot Laughton on behalf of Nicholas Karagianis. This appeal arises from the atypical context of a combined change of plea and sentencing hearing. What's atypical about that? That it is not the norm in the vast majority . . . I did hundreds of combined plea and sentencing hearings in the same courtroom that Judge Pratt did in this case. It's not perfectly common. In my limited experience as a federal defender over the last years and speaking with colleagues who represent federal defendants across the entire circuit, my understanding is that's not the norm, at least in this circuit, although Judge Hamilton, you know the Southern District of Indiana . . . I do. . . very well. There's nothing remotely unusual about this, and in fact, it can help a defendant by being able to see a pre-sentence report before he actually goes through with the plea. Point very well taken, Judge Hamilton. I think to that . . . I would suggest you not focus on anything unusual or atypical or unfair about this process and focus on the merits. Absolutely. In terms of the issues that we've raised and the merits of those issues, there are three issues, two Rule 11 violations and one claim of breach. I separate the first Rule 11 issue concerning the Sentence Reduction Appeal Waiver from the latter two issues because it provides the simplest and narrowest path for relief. The court does not even need to address the latter two issues because any of the three provides an independent basis to vacate and remand. We think that that first Rule 11 issue is the easiest way of doing so. Rule 11 demands clarity. That's what the court said in Gallaudet, and here the District So what's . . . Mr. Lawton, I understand that obviously this would have been much cleaner if that had been addressed explicitly. It was in the plea agreement, which the defendant said he had read and understood. What is the best indication we have in this record that the right to appeal a denial of 3582C2 relief was important to Mr. Karagiannis at that time? So we have a few points here. One, the confusion in the record where they go off the record. The District Judge begins discussing his appellate rights, and then there's some confusion, pause, they go off the record, then they return to the record, and that, per the Supreme Court's discussion in Lee, I think provides, quote, contemporaneous evidence that his appellate rights mattered to him and his collateral . . . Appellate rights in general, no doubt, but the only specific omission you're challenging here is the 3582C2 appeal, right? That's right. So, okay, keep going. So that provides evidence that his appeal rights and collateral relief rights mattered to him, and then number two, we have his letter that he filed after sentencing where he expressed confusion and asked the court for help in the vacated plea, and in there he mentions, among other things, that part of why he pled was that he could, quote, modify, and we construe pro se filings liberally in favor of the litigant, and it makes good sense that that would be his strategy. If I were representing him in the district court and he doesn't have much of a defense, right, he's going to plead guilty. We look and say that these meth guidelines are harsh, but you have a good shot down the . . . you have a potential shot down the road, given the discourse around the meth purity disparity, and potentially getting a guideline reduction, and that's . . . and then, lo and behold, we have the sentencing commission a few months later proposing those very amendments, and so . . . Mr. Lawton, the . . . right after the break that you mentioned on page 26, the court then kind of spells it out, doesn't it? The judge says, so you're waiving the right to appeal, and you're waiving these post-conviction proceedings, but there are some exceptions, and let me talk to you about them, and one exception is that the government will not prevent you from filing a motion back here in the district court, right? And so the court says, look, you're waiving everything. You can do a couple of small things. One is you can file a motion in the district court, right? Why doesn't that adequately inform Mr. Karygiannis of the fact that everything else is waived? Two points of response, one doctrinal, and one based on this specific transcript. Stepping back doctrinally, Rule 11 contemplates a two-way street. It's not only that the district court must inform the defendant of the . . . whatever Rule 11 provisions that issue, but that the district court must also determine the defendant understands, and so it takes into consideration the defendant and his or her knowledge. You know, as I read the transcript, counsel, I think she was trying to ensure that he understood. Reading pages 26 and 27, that's how I read the transcript. She was concerned, and she was fulfilling her obligation under Rule 11 to actually go further and walk him through. That's how I read the transcript. I read it the same way, Judge Maldonado. And so to get to that second point, I think what happened here is there's no ill will or malice. I think this was just an oversight and a misstep. If you pull the plea agreement itself, and specifically where it concerns his Part 8, it's Appendix 19 to 20. It's pages 12 to 13 of the plea agreement. What I believe the district court judge did was specifically walk through each of these paragraphs, and you can see how each question in the transcript relates to that paragraph. And so when it comes to the district judge, to your point, Judge Maldonado, of trying to ensure that he understands everything here and ensuring that he is informed, I think what happens is there's just the omission. The final sentence of Paragraph 27B, which concerns the retroactive sentencing guideline reductions, was missed. And she looked at it and saw, oh, he can file such a motion, and she tells him, but she misses. And understandably so. There's a lot going on in these hearings. Mistakes happen that the last sentence says, furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, this waiver bars the appeal. And then that final sentence was not conveyed to him in the change of plea hearing. Would it be a sufficient remedy here, Mr. Louthan, to say that if and when Mr. Karagiannis seeks relief under 3582C2 and is denied, that the appellate waiver would not be enforced? We've got several contingencies out there. Sure. Judge Hamilton, I think that would be sufficient relief on the first issue. Mm-hmm. But ultimately, that doesn't remedy issues two and three. And so if that was the remedy provided by this court on the first issue, then there would be a need to address the tandem of issues two and three. Because ultimately, Mr. Karagiannis takes the position that his plea was unknowing, and he is looking to vacate that plea. I recognize I'm into my rebuttal, and I'd be happy to address any of the court's questions on issues two and three. Well, yeah, I guess, what's your best case? We're on plain error review on all of these things. That's right. And what's your best case where the district court offers a different guideline calculation, that it's a breach of the government to fail to object? The best case is Cruz in the Third Circuit, where the benefit of the plea agreement is that the parties will present a united front on what his offense level should be. And I know the government filed the First Circuit case, Carvajal. The reason why that case is different is that in this sort of context, no doubt both parties are walking a fine line, where if the district court asks a factual inquiry, you have an ethical duty to answer that factual inquiry accurately. But to take the legal position that an offense level, an enhancement applies that was not bargained for, means that Carvajal is not receiving the benefit of the bargain that he struck with the government. Well, nobody objected, right? That's correct. Was defense counsel asleep at the switch, or did she understand that Tinsley had changed the double counting rule? This, when I read through this record, Judge Hamilton, I see confusion. I see the defense counsel being asleep at the wheel. I think Keira Giannis's post-sentencing letter is just, it just echoes in that sentiment. His counsel did not do him a justice and took advantage of him. All right, thank you. Mr. Clark, good morning. Good morning, Judge Lee. Colin Clark on behalf of the United States. I'd like to start out with the Cruz case, the Third Circuit case that my friend cited. In that case, the United States agreed that they had advocated for the guideline difference, which was not permitted by the plea agreement. That's essentially the main point of contention between us, and so I don't see how Cruz really helps him. In fact, the issue there was not the failure to object. The issue was the advocacy. And so the opening brief, at least, is styled as the silence is the breach. And every case the United States found, and there were many, said that an objection alone is not a breach. And to my friend's point, I don't believe that there's any case he's ever cited, or any case in any of those cases that we cited, that says the failure to object is itself a breach because of the Benchimol case from 1985, the Supreme Court case. So beyond that, I think this court would like to avoid a Rule 11 situation to address something else that was discussed, where district court judges act like they have a checklist of 15 or so items that they have to cover under Rule 11B. Have you seen the bench book? All three of us have done that many, many times. It's a checklist. Let me clarify. And I know that all of you have much more district court experience than I do. But while there are things that must be covered, to overemphasize those things, and to underemphasize the importance of the discussion, the importance of reaching understanding with the defendant, I think you lose something. In terms of whether this transcript shows confusion, it does not. It shows an off-the-record conversation between the defense attorney and her client. Recognizing that it's generally a rule in post-conviction proceedings, we normally presume that counsel is effective, particularly on direct review, before we've even had a 2028 U.S.C. 2255 motion. I don't think it'd be in line with this court's precedent generally to presume misunderstanding. In fact, if we have a defendant who wants to ask a question, we should encourage off-the-record conferences to take a pause, slow it down, make sure that there's a full understanding. Mr. Clark, can I ask you about this waiver on appeal of a denial of a 3582C2 motion? Yes, Your Honor. I have frankly never seen that provision in a plea agreement before. Is that important to the government? As I understand it, it is a part of our office's current standard plea agreement. However, because of this case, I don't think I'd be giving you too much inside baseball to say we've had a discussion about whether we should have it going forward. But we believe that here it is valid and enforceable. Well, it obviously was not addressed in the Rule 11 colloquy. And one option seems to me would be to simply defer a ruling on whether it's enforceable or not and wait, let that be decided if and when such a motion is filed, an appeal is filed, and the government then seeks to dismiss it based on the appellate waiver. Another option might be just to say, look, this apparently got past everybody. I don't know why the AUSA didn't speak up when this was going on. I don't know why the defense counsel didn't speak up when this was going on. But just go ahead and say now this little niche of a waiver is not going to be enforceable in this case. Go forth and fix this going forward. If I may first challenge the premise of the question, it was covered. This was covered. As on page 26 of the transcript, there's a general waiver to post-conviction proceedings, and the word proceeding includes an appeal, as we cited Black's Law Dictionary for that, with exceptions. And so we have a general waiver with exceptions to be discussed. And the applicable exception was the government agrees that this waiver will not prevent you, Mr. Karagiannis, from filing a motion back here in the district court to get that retroactive sentence reduction. That's on page 27. If the district court wasn't trying to follow the plea agreement, there's no other reason to have the words in the district court. The words in the district court show that the district court judge knew what she was talking about at the time. But then just forgot to mention that that will be final and you won't be able to appeal from that? That's reading an awful lot into that. In the Stoller case, which we cited, it does permit implicit coverage of the issues in a Rule 11 colloquy. And so I believe it is necessarily implicit in what she said, as a matter of logic. And you may not buy that, Your Honor. I don't, frankly. Nor do I buy your suggestion that mandamus is a sufficient or relevant remedy here. Okay. Let me at least get back to the question you did ask, and that's what about the next step? And the Coleman case shows that there was an adequate substitute for the knowledge that if you find the transcript lacking. There's no suggestion that the plea agreement itself was defective in any way. It covers all the issues. Under Coleman, if you have testimony that the defendant read the plea agreement, discussed it with the attorney, and understood it, that is an adequate substitute for a Rule 11 violation such that there's no prejudice. Moreover, under Dominguez-Benitez, the issue with prejudice is not whatever might affect positively Mr. Karagiannis' case, but he has to show by a reasonable probability that he would go to trial. There's no evidence in this record that he wanted to go to trial. Even his letter equivocates as to whether he wanted a trial. And so even if you take him at his word, and you shouldn't because the letter was not under oath and his testimony was and they conflict, but even if you do, he doesn't want a trial, and so there's no prejudice on that first claim. And so therefore, even if you take it all as true, there's nothing, there's no relief. And I was surprised that my friend did not address Coleman in his reply brief. As to the second argument, the court, not the probation officer, not the parties, has an obligation to calculate the applicable sentencing guidelines range, and I don't understand that there is any legal obligation to work off the PSR or use it as a guide. To require the district court to say that would be to require the court to commit legal error as an unaccepted PSR is nothing more than a recommendation by the probation officer. And then you think it would be a good idea to let the defendant know that the judge is going to look at that PSR and start with those guideline calculations? The district court confirmed that the defendant read the PSR, and the probation officer explains that the calculation guideline is different from the plea agreement. It says that explicitly on page four of the PSR, and so at this point in these proceedings, we assume that what everybody's testifying to is accurate. And so, if Mr. Karajanis said that he read the PSR, we must, absent compelling evidence to the contrary, find that he read that the PSR and the plea agreement had a different guideline calculation. The methamphetamine argument, the sort of prejudice argument on this first claim, is it seems to be based on two contradictory showings. First, on one hand, we have a novice, first-time federal defendant who does not intuitively understand the guidelines and doesn't know what he was waiving. Yet, on the other hand, we have this potential 3582C sentence modification strategy that stems from the hope that the federal judge would be willing to address the methamphetamine sentencing disparity. That's on page 21 of the opening brief. That would mean that both the argument is something like this, that Mr. Karajanis, is that the 3582C2 appeal waiver is material to him because he foresaw in 2023 a possible change to the sentencing guidelines in 2025, possible retroactivity at a later time, and the possible need for an appeal after he was denied a motion after that. That is fundamentally inconsistent with the idea that he didn't understand what his 3582C2 rights were. And so, I asked this court to simply take Mr. Karajanis at his word in his plea agreement and in the transcript, something that is fundamentally different than the Sura case that my friend has talked so much about, that given taking all of that as true, this was a knowing, voluntary waiver. Thank you very much, unless there are further questions. Thank you, Mr. Carter. Thank you. Mr. Sullivan, we'll give you two more minutes. Please. Thank you, Judge Lee. I'd like to address the fundamental tension into a question that you asked Judge Hamilton about the significance of the pre-sentence report, and to your point that these sort of hearings are common and there's a benefit for defendants in these combined hearing contexts, with it being that they have the pre-sentence report in hand. Here, that pre-sentence report and the significance of it was not addressed in the Rule 11 hearing. And Rule 11B1M, by its terms, encompasses needing to spell that out, the significance of the pre-sentence report out, so that the defendant understands what is the district court's obligation to calculate the sentencing guidelines and what that obligation means. As a first-time federal defendant, it might seem counterintuitive to us that someone would not necessarily understand what a PSR does, or what its relationship is to a plea agreement. But for a federal criminal defendant, we oftentimes are explaining to them the relationship between the two, and that the PSR takes precedence over the plea agreement. That's not necessarily clear to someone, and the fact that the government flags, well, he said he read the PSR, he swore to that, sure, he absolutely read the PSR, but that doesn't mean he understood its relative insignificance to the plea agreement. And I think what is the fundamental tension is that if he understood the significance of the PSR, he would have spoken up during the sentencing. But he didn't. And that shows how there is an additional Rule 11 error that his plea was not fully knowing and voluntary. And had he understood the relationship between the two, he would not have pled under the confines of that restrictive agreement. And there's a reasonable probability that the outcome of the proceeding would be different. If there are no further questions, we'd ask that the court vacate and remain. Thank you. The case will be taken under advisement.